## LYNCH v. CHEW.

(District Court, E. D. Pennsylvania. January 31, 1908.)

### No. 43.

1. TOWAGE—REPAIRS TO TUG—LIABILITY OF HIRER.

Where respondent hired a tug, and agreed to pay the cost of shortening its stack in order that it might pass under a certain bridge, whereupon the tug was taken to a shipyard, where repairs were made on her, for which a charge of $30 was made, including the shortening of the stack, and the evidence did not show the value of the separate items, an allowance of $15 only would be made against respondent for shortening the stack.

2. SALVAGE—PUMPING BARGE—FAULT.

Respondent negligently sent a barge in an unseaworthy condition on a voyage in tow of libelant's tug. The barge was saved from sinking during the voyage with the aid of pumps; but when she reached her dock libelant abandoned her, whereupon she immediately sank, and libelant thereafter pumped her out at respondent's request. Held that, since both libelant and respondent were at fault, libelant was only entitled to charge one-half of the reasonable cost of such service.

[Ed. Note.—Awards in federal courts, see note to The Lamington, 30 C. C. A. 280.]

3. SAME—TOWING.

Where a barge sank because of the negligence of both libelant and respondent, and after libelant had pumped the water from her he towed the barge to a shipyard for repairs, which were needed, before she sank, libelant was entitled to recover the cost of the towing.

4. TOWAGE—REPAIRS TO TUG—DELAY.

Where respondent hired a tug and consented that she be sent to a shipyard to have her stack lowered, respondent was entitled to an allowance for delay, both of the tug and barges, occasioned by other work on the tug, done for the master's individual benefit.

5. SAME—COMPENSATION—IMPROPER NAVIGATION.

The hirer of a tug is entitled to an allowance for delay caused by the tug's running aground because of an error in navigation.

6. SAME—INJURY TO BARGE—EVIDENCE OF DAMAGE.

The hirer of a tug was not entitled to an allowance for damages to a barge by a collision with the bridge while in charge of the tug, where there was no evidence from which the money value of the injury could be estimated.

In Admiralty.

Willard M. Harris, for libelant.

Stanley Williamson, for respondent.

J. B. McPHERSON, District Judge. This action in personam was begun by process of foreign attachment against two persons who were averred to be partners, but it is now conceded that the suit should have been against Stille C. Chew only, and recovery is sought against him alone. The libelant's claim is for a total made up of several items, some of which are admitted, while others are in controversy. As a further defense, the respondent is urging several counterclaims, and upon the whole case asks for a money decree in his favor. It will therefore be necessary to examine the items in dispute, and determine separately how far each should be allowed.

The libelant is the master of the tug Clarksville, and was employed by the respondent in September, 1906, first, to tow by the week at a specified rate, and afterward to tow by the trip upon several occasions. It is agreed that the libelant is entitled to charge $545 on account of these engagements, and also that the respondent is entitled to a credit of $431, so that the inquiry begins with a conceded balance of $114 in favor of the libelant. He asks for a further allowance of three items amounting to $75, all of which are in dispute. The first item is $20, being two-thirds of the sum paid to Neafie & Levy's Shipyard for work done upon the tug. The bill is not produced, but it appears that part of the work was shortening the smokestake so that the tug could go under a certain bridge on the way to Swedesboro. The respondent agreed that the stack should be shortened, and promised to pay the cost. The shipyard's bill was $30 but this included a charge for other work that was done at the same time upon the tug for the libelant's benefit alone. The testimony does not enable me to separate the items precisely, but I think that the libelant should not be allowed upon this account more than one-half the bill, or $15.

The second item is $45, for 9 hours' pumping upon one of the respondent's barges, the Idella, under the following circumstances: The barge had not been in good condition for several weeks at least, and this fact was well known to both parties. She leaked badly and needed constant attention. Nevertheless, she was loaded in Philadelphia while thus unseaworthy, and was sent by her owner, and

taken by the tug, upon a voyage down the Delaware river and up one of its tributary creeks to Swedesboro, where she arrived in safety, but sank at the wharf in half an hour afterward. During the voyage she was only saved from sinking by voluntary aid at the pumps given by the master of another barge that was also in tow of the tug. When Swedesboro was reached, the barge was promptly deserted by her crew, a lad of 17, whom the respondent had put in charge of her before she left Philadelphia, and was deserted also by the libelant, who turned the tug about immediately and returned to the city, without giving the barge such attention as he must have known she badly needed. As already stated, she sank without delay, and had to be pumped out not long afterward. This service was rendered by the libelant at the respondent's request, and the charge of $45—which seems to be at a reasonable rate—would be allowed if the tug had not been obviously at fault in deserting the barge under the circumstances just described. But the respondent was also at fault in sending the barge on a voyage in a leaking condition, and with no one of experience to look after her—for the boy did little or nothing except make the voyage and then run away—and I think, therefore, it would be no more than just to require each of the parties to bear one-half the cost of pumping.

The third item is $10 for towing the barge to Chester, where she was taken to be repaired after having been pumped out, and this I think should be allowed in full. There is no evidence that the repairs were made necessary by the sinking; on the contrary, they were badly needed before she sank, and even before she left Philadelphia the respondent had announced his intention to have the leaks attended to after the voyage should be completed.

Allowing, therefore, $15, $22.50, and $10, making $47.50, for these three items, the libelant's account is increased to $161.50.

Turning now to the respondent's counterclaims, it appears that one of the items, $55.50, is for the delay of the tug and two barges for a day and a half while the smokestack was being cut. This must be reduced. There is no satisfactory proof to justify a full allowance for delay of the barges, but I think there was a partial delay both of the tug and of the barges, due to the work that was done for the libelant's individual benefit. I think this may be fairly estimated at one-half the time (a day and a half) that was taken for the whole job, and that the respondent should have a credit of $18.75, or three-fourths of the charter rate ($25 a day) that was paid for the tug, and a credit of $11 for the delay of the barges.

Another item is for a half day's delay caused by the tug's running aground in Christiana creek. Prima facie, at least, the tug was at fault for this error in navigation, and the presumption of negligence or incapacity has not been satisfactorily rebutted. An allowance of $12.50 should, therefore, be made on this account, and an additional allowance of $9, compensation for delay of the barges.

A third item is $18.50 for a half day's delay of the tug and two barges by running aground on another occasion in Raccoon creek, and for the reason already given this credit should also be allowed.

The fourth item is $100, which is claimed as damages caused by

the sinking of the Idella at Swedesboro; but except for the delay of two days there is nothing beyond the most vague and general testimony upon this point, and for this reason I cannot allow more than $12.

The last item is a second charge of $100, damages claimed to have been done to the Idella by collision with the railroad bridge at Swedesboro, which is said to have been inflicted while she was in charge of the tug. If for present purposes the tug's liability be assumed—and a good deal of reason for assuming it may be found in the libelant's conflicting testimony upon this point—nevertheless I can make no allowance to the respondent, because he has furnished no evidence from which the money value of the injury can be estimated. Nothing was offered except some general statements on page 37 of the respondent's testimony, and the following questions and answers on cross-examination (page 58):

"Q. How do you make up the damage of $100?
"A. By the amount of damage done to her.
"Q. Have you had her repaired?
"A. Broken planks repaired.
"Q. Have you got your bills for repairs? How do you say $100, when you have nothing to prove it?
"A. I built the boat in the first place. I know her exact cost and paid many hundred dollars for repairs on her, as well as on many other barges. I know exactly what it would cost. I consider that $100 is low."

The respondent's credits being $81.75, the balance due the libelant must be reduced to $79.75, for which sum, with interest from the date of bringing the suit, a decree may be entered against Stille C. Chew. It is further ordered that the costs be equally divided between the parties.